MOORE, J.
This case is on error to the court of common pleas of this bounty.
It appears that Peter Andrews obtained a verdict in the oourt below, and judgment upon it, against the defendant railway company, and it is now sought to reverse that judgment for numerous errors that are assigned as appearing upon the record. Those relied upon by counsel, are, that the court erred in refusing to charge the jury certain propositions that were asked to be charged, and in giving certain propositions to the jury, and that the verdict of the jury below is not sustained by the evidence.
The case is one against a railroad company for negligence.It appears that the plaintiff was a brakeman, an employe of the defendant railway company, and at a time when they where making up trains in the yards of the company in what is called, I believe, the Manhattan yards, was injured. He says that injury was occasioned by the act of the conductor in giving a signal by which the cars of the train were suddenly backed upon him while he was in the act of uncoupling freight cars that were attached to the hind end of the train.That appears to be the act of negligence relied upon for recovery. It is not necessary to detail the averments of the petition at length. Suffice it to say that the claim is made that the conductor, while making up that train, knowing that this brakeman was between the- cars in the act of uncoupling them, and the cars were at a stand still and a place of safety, and liable to remain so, without the knowledge of the brakeman gave a signal to the engineer to back up the' train, and he did so, in' order to throw the cars back upon the main track and *700 couple them with other cars — that is, in the parlance of railroad men, to kick the cars; and that his arm, which he had aver between the ears in the act of uncoupling them, was jarred or thrown between the bumpers, and injured so it had to be amputated.
This claim is denied on the part of the railroad company; and it is claimed that whatever injury was received by the plaintiff below was caused by his own negligence; that at the time that he was injured the cars were in motion, and he went into a dangerous place, and that he knew that these cars that he was endeavoring to uncouple had what is called bumpers or deadwoods, to prevent them from coming together; and that to undertake to uncouple cars, constructed as they were, while the train was in motion, was dangerous, and he knew it; and that any injury resulting by reason of it was caused by his own negligent act, and that they are not liable, either because the conductor gave the signal or because the act was negligent.
It appears from the evidence in the. case that employes of the company, consisting of a conductor, named Hurst, and an engineer, whose name I believe was Cook, a fireman named Martin, the plaintiff below, Andrews, and another brakeman by the name of Munson, were engaged in this work of making up this train; that they had it partly made up; and they had taken these three cars they were seeking to detach from the engine, or from that part of the train on the main track, and to throw them back further upon the track; that there was an up-grade. On the part of the plaintiff it is claimed, as I have said, that these cars were stopped before — that they were stopped after he had undertaken to uncouple them and failed to do so; and he then stepped out from between the cars and gave a'signal for the train to stop, and it did stop. He undertook to get a stone, or something, to aid in driving the pin out which had become fastened so that he could not at the first attempt uncouple the cars; that not succeeding after the train had come to a stop, he went between the cars, and in reaching over to uncouple them, to draw the pin, the conductor gave the signal to the engineer to suddenly and violently throw the ears back, so as to kick the cars up the grade, and detach them and uncouple them from the forward part of the train, so that they could be attached to the train that was being made up; that without any notice to him or knowledge on bis part it was done, anil he was struck in some way, and his arm jarred in between these bumpers, and it was crushed and afterwards ai utated.
The evidence on the part of the railroad company, by the conductor and the fireman, is to the effect that the train did not stop, but that it slowed up. No signal was given by the conductor to drive the ears back, as claimed on the part of Andrews; that he went in there when this train was in motion and placed his arm between the bumpers, and was injured by reason of that act.
Of course,there is a good deal of testimony in this case as to the relative position of the cars, the condition of the cars, and so on; but these are the main things bearing upon this question of negligence. I do not apprehend that it will be profitable to take very much time in detailing the evidence. Upon *701 that state of facts the case was submitted to the jury and a verdict rendered which I have stated.
Defendant below, by its counsel, requested the court to give in charge to the jury nineteen separate and distinct propositions of law, all of which the court gave except three, and it refused to give the first, third and fourth propositions asked, and it is claimed that the court erred in its - refusal to give these three propositions.
The first proposition asked to the charge is:
“The burden of proof is on the plaintiff to establish the negligence of the defendant which he charges in his petition, and if he fails by a fair preponderance of proof to establish: 1st. That those cars were stopped and were standing still when he entered to do the work: 2nd. That the conductor knew that he was there, and that the cars had stopped, and that to move the train was liable to cause injury to the plaintiff, or by the exercise of reasonable care should have so known, and so knowing, and without the consent or knowledge of plaintiff in time to protect himself, gave the signal to back up, and the train was backed up in obedience to that signal, and that the injury resulted therefrom, he cannot recover in this action.”
The proof is, and I believe by the conductor himself, that he knew that this brakeman at the time immediately before was making an endeavor to uncouple those cars; that he had failed in his first attempt to do so, and that he was continuing that attempt. That was the purpose of having him there, to un- . couple the oars, and he was making an effort to uncouple them. It appears to me at least, and I think to all of us, that in such a condition and under such circumstances the conductor should have known that this employe of the railroad company, who was under his direction, was away from that place of danger before he undertook to suddenly throw those cars back. It appears that he knew that he was undertaking to uncouple them, and he should have known that the brakeman was away — that he was out from between the cars; that he had placed himself where he would be safe when that act was done which was accomplished upon the signal of the conductor— that is, the act of throwing back suddenly this train of cars. We think therefore that the court very properly refused that request.
The third was as follows:
“Even if the cars had stopped, and the plaintiff was trying to make the uncoupling, the fact that the conductor, if you should find that to be a fact, gave the order to back up, would not be such negligence as would render the company liable, if he had reason to believe that the plaintiff was in a position where he could protect himself from danger.”
" We think that is subject to the same objection as the first one.
The fourth is:
“And even under the circumstanees above stated, if the plaintiff in the exercise of reasonable care could have kept his arm from between the deadwoods, and failed to do so, the negligence of the conductor would not render the company liable.”
It appears that this goes to the extent that if under these circumstances the cars were standing still, and the plaintiff *702 had placed his arm between these deadwoods, it would be an act of negligence on his part. We do not think that that should be so declared as a matter of law. It might be perfectly safe, or it might be dangerous, according to the circumstances. We have examined in connection with this the charge of the court and other propositions that were asked by the defendant below, and we; think they fully cover the case, and the proper charges were given. The court below charged:
“If the plaintiff went in between those cars a second time to uncouple when they were moving, and in uncoupling there with those cars moving he put his arm between the bumpers, that would be an act of negligence on his part, and such contributory negligence as would prevent his recovery against the defendant. If the cars were stationary when he went in there, and the bumpers were open, and he in uncoupling with the cars standing still placed his arm between the bumpers, then consider all the testimony given, consider what is likely to transpire in the handling of a train in that way, in the situation of the cars as they have been shown to you, and the custom in such matters, and the evidence you have bad asi.to what is likely to happen on such occasions. If you find that the plaintiff did put his arm between the bumpers there at that time, inquire whether that was an act of negligence under all these circumstances, and see whether a man of ordinary prudence and intelligence would have done that; and if you find that that was dangerous, that that was such an act as a man of ordinary prudence and intelligence would not do, you would be justified in finding the plaintiff negligent in doing that, and would be justified in finding that act of negligence on the part of the plaintiff contributed to his injury, and therefore that he could not recovsr against the defendant. But you must inquire as to how this did happen.
The court further charged upon that proposition, and upon request—
“And even if the train was stopped temporarily, if the plaintiff as a reasonably careful man ought to have known that to put his arms between the deadwoods was dangerous,and he did put them there, he assumed all the risks of so doing.
“If the plaintiff, by exercise of ordinary care, could have prevented his arm from getting between the deadwoods, he cannot recover.”
We think, taking the charge of the court in connection with this proposition that the defendant company requested, it covers the whole case in that respect, and it was not error to refuse this proposition or any of these propositions that the court did refuse.
Some exceptions were taken to the charge as given. There is one of them that I will notice. It might be well to say that outside of this, we think the charge as given covers the whole case and every phase of it that was warranted by the evidence, and was a very fair charge, and all that the railroad company, the defendant below, could have asked as bearing upon the evidence. This, however, was given and excepted to:
“Look over the whole case, gentlemen,' and if you find that under all the evidence, the defendant was guilty of negligence, and such negligence as caused this injury to the plaintiff, and that the plaintiff was free from any negligence which contrib *703 uted to his injury and caused it, then it will be your duty to return a verdict for the plaintiff in such an amount as in your judgment you shall consider a fair remuneration for the damages he has suffered from the injury. In making this computation, yon have a right to take into account the physical pain he has suffered, the expense of doctors and medicine in being oured, the loss of time, and also you may remunerate him for any damage he has suffered by reason of his powers being impaired and being made less able to earn money and obtain employment on account of this injury. Consider it all.”
The plaintiff in his petition averred “that by reason of the premises he has been confined to a bed of sickness, suffered the amputation of his arm and great anguish pfbodyjand mind, and has been put to a great expense for doctors and medicine, and is crippled, disfigured, and disabled for life from performing the labor necessary to maintain him, and for which he was by constitution and training fitted, and has sustained damages in the sum of $30,000.” The court had charged the jury that they may take into consideration the expense incurred for medical treatment. There was not a particle of evidence offered to show what that was. There was evidence which showed that he was taken perhaps to a hospital, and his arm amputated, soon after this injury occurred; but there was no evidence for any amount of medical services — no mention of a physician’s bill which he had paid or which he would be made liable for — nothing of that kind; still, the court said that they might take that into consideration. Now, how much or how little that enhanced the finding of the jury in favor of the plaintiff — increased the amount — we have no means of ascertaining; but the court said that they might take it into consideration in estimating the amount of damages. We think that was wrong; we think that was error. We have examined this question with a good deal of care, because it is the only one upon which, as a question of law, we would be called upon to reverse the case, but we find the authorities all one way, and I will just read briefly from one authority, which settles the rule as we find it universally.
In the case of Reed v. Railroad Co., 57 Iowa 23, the court say: “To recover for medical attendance and ^medioines, in in actions for personal injuries; the value thereof must be established by proof; and where no value is shown, an instruction including reasonable compensation therefor, is erroneous.” In the opinion, the court says:
“The court directed the jury that if they found that plaintiff was entitled to recover, they should among other damages allow for “expenses reasonably incurred for medical care and attention.” Of course, upon' proper evidence showing the amount, or proximate amount, of these expenses, plaintiff would be entitled to recover them. But there is not one word in the evidence upon which an estimate can be based of their amount. The testimony shows the plaintiff was treated by a physician three or four'times, and that he procured medicine for his injuries. The value of these medical services and medicines are not attempted to be shown in any manner, and their extent and character are no more definitely shown in the testimony than in the statement we have just made. Under the instruction in question the jury were directed to include *704 compensation for medical services in their verdict. They doubtless would feel authorized to determine the amount to be allowed therefor according to their own judgment, without aid of evidence. But the law cannot be administered in this uncertain way. Damages of this kind can not be found by the jury except upon proof. It will not do to say that the amount of damages allowed by the jury may have been small. We can know nothing about the amount, and if we could know it to be insignificant, we could not relieve this case from the operation of the familiar rules of law which require damages of the character of those under consideration to be established by proof. For the error pointed out, the judgment of the district court must be reversed.”
The same is held in the case of Eckerd v. Railroad Co., 70 Iowa, 53. And again in Ry. Co. v. Zipperlein, 1 O. C. C., 36, deoided by the first circuit at the February term, 1886, in which a judgment was reversed for precisely the same thing in the charge. We have examined the case, and find that that is the only error upon which the court below was reversed. There was no evidence to show what the amount of the medical servioes were for the treatment of the injury. We find no authorities adverse to those which I have cited.
Of course, this is a matter of damages which can be ascertained and proved, arid if it is to enhance the damages or amount of recovery, it cannot be left to the jury to guess at what a physician would charge for amputating a limb or for treating a person who has been injured. That is susceptible of proof as to the amount of the bill, and if it was worth the amount charged.
This case was reversed at a former term because the verdict was not sustained by the evidence. We will not pass upon that question now, the court being the same judges that passed upon it before. The evidence perhaps comes to the court in a different form from what it did before. It would be of no moment whatever to pass upon the question, and we do not do so.
For the error of the court in its charge upon the rule of dam- • ages, which included an amount for medical services, the judgment below will be reversed, and the case remanded to the court of common pleas for further proceedings.